UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DEANDRE MOORE,                              )
                                           )
                    Plaintiff,             )
                                           )
            v.                             )        No. 2:20-cv-00124-JRS-MG
                                           )
E. ANDREWS,                                )
K. PIERCE,                                 )
                                           )
                    Defendants.            )

**Order Denying Motion for Partial Summary Judgment**

Plaintiff Deandre Moore, an inmate currently incarcerated at Wabash Valley Correctional Facility, brought this action under 42 U.S.C. § 1983 alleging that correctional officers at Correctional Industrial Facility in Pendleton, Indiana ("CIF"), used excessive force against him when they sprayed him with pepper spray to remove him from the recreation room.[1] Defendants Eric Andrews and Kenneth Pierce have moved for summary judgment, dkt. 96, Mr. Moore has responded, dkts. 105–08, and the defendants have replied, dkt. 109. For the reasons explained below, the motion for summary judgment is denied.

## I. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of

---

[1] After screening, Mr. Moore was also allowed to proceed with a Fourteenth Amendment equal-protection claim. *See* dkt. 42. Neither defendant has moved for summary judgment on that claim, so it will be resolved by settlement or trial.

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the nonmoving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). However, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019). In this case, the Court had the benefit of a video recording of the event at issue.

The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. FACTS

In June 2019, Mr. Moore was incarcerated at Pendleton. Declaration of Matt Worthman ("Worthman Dec."), dkt. 98-1 ¶ 5; *see also* Defendants' Statement of Material Facts Not in Dispute ("Defendants' Facts") ¶ 1. On June 11, 2019, Mr. Moore spat on defendant Pierce, who is a

sergeant. Declaration of Sergeant Pierce ("Pierce Dec."), dkt. 109 ¶ 4.[2] As a result, Mr. Moore was required to wear a spit mask when being transported through the facility. *Id.* ¶ 5.

On June 14, 2019, defendant Andrews—who is a correctional officer—escorted Mr. Moore to the recreation room for recreation time. Declaration of Officer Andrews ("Andrews Dec."), dkt. 98-2 ¶ 4. Mr. Moore removed his spit mask while he was in the recreation room, and—for reasons not made clear by the record—the spit mask ended up sitting on the floor outside the door. Dkt. 105 at 4. Officer Andrews apparently knew that the spit mask was on the floor, *see id.*, but did not pick it up, so it remained there for the whole time Mr. Moore was in the recreation room, about an hour, *see* Declaration of Deandre Moore ("Moore Dec."), dkt. 104 ¶ 4; *see also* dkt. 105 at 8.

Around 1:10 p.m., Mr. Moore's recreation time was over. Andrews Dec., dkt.  98-2 ¶ 5. Officer Andrews approached the recreation room, picked up the spit mask, handed it through the cuff port on the recreation room door, and ordered Mr. Moore to put on the spit mask and submit to restraints. *Id.* ¶ 6; Moore Dec., dkt. 104 ¶ 5; Video[3] at 1:10:57–1:11:14. Mr. Moore took the mask but did not put it on. Andrews Dec., dkt. 98-2 ¶ 9; Moore Dec., dkt. 104 ¶ 6; Video at 1:11:17–1:11:50. For the next 30 seconds, the video shows Mr. Moore talking to Officer Andrews. Video at 1:11:17–1:11:50. Mr. Moore refused to wear the mask because it was dirty and asked for a new spit mask. Moore Dec., dkt. 104 ¶ 6. Officer Andrews would not get him a new spit mask. *Id.*

Officer Andrews then walked away from the recreation room. Video at 1:11:50. He told Sergeant Pierce that Mr. Moore was refusing orders and asked for assistance. Andrews Dec., dkt.

---

[2] In his summary-judgment response, Mr. Moore argued that the Court should not consider Sergeant Pierce's declaration because it was not signed. *See* dkt. 106 at 3 (referring to dkt. 98-3). The defendants later submitted a signed declaration from Sergeant Pierce, *see* dkt. 109, and the Court considers that declaration.

[3] The video of this incident was filed manually in CD format. *See* dkt. 100.

98-2 ¶ 7; Pierce Dec., dkt. 108 ¶ 6. While Officer Andrews was gone, Mr. Moore walked toward the back of the recreation room and climbed up on top of the pull-up bars. Moore Dec., dkt. 104 ¶ 6; Video at 1:11:58–1:12:03. Officer Andrews and Sergeant Pierce returned back to the recreation room. Pierce Dec., dkt. 109 ¶ 6; Video at 1:13:04. Mr. Moore again asked for a clean spit mask, but Officer Andrews and Sergeant Pierce told him that the other masks were unavailable or located inside the storage room. Moore Dec., Dkt. 104 ¶ 7. About a minute-and-a-half later, Officer Andrews and Sergeant Pierce briefly walked away from the recreation room, returning less than a minute later. Video at 1:14:33–1:14:20. The video shows that Officer Andrews returned to the door at 1:15:06 and that, at 1:15:52, he administered a one-second burst of Oleoresin Capsicum spray ("pepper spray") through the cuff port of the recreation room door. Andrews Dec., dkt. 98-2 ¶ 11; Moore Dec., dkt. 104 ¶ 8; Video at 1:15:06–1:15:52. Mr. Moore was still seated on top of the pull-up bars at the time and is not visible in the video. Andrews Dec., dkt. 98-2 ¶ 10; Video at 1:15:00–1:16:00. About a minute later, Officer Andrews and Sergeant Pierce walked away from the recreation room. Video at 1:17:00–1:17:10.

About three-and-a-half minutes after Officer Andrews and Sergeant Pierce walked away, Mr. Moore came down from the top of the pull-up bars and back in view of the video camera. Video at 1:20:40. After he came down from the pull-up bars, he did five pull-ups. *Id.* at 1:20:57–1:21:08. He then walked around the room for about 40 seconds, at which point he stuck out his hand. *Id.* at 1:21:08–1:21:50. In the video, Mr. Moore's hand briefly goes off camera, but when it comes back into view, he is holding the old spit mask that he had been refusing to put on. Mr. Moore then walked across the room and slid the mask underneath the door of a storage-room door less than a minute after he retrieved the mask. *Id.* at 1:21:50–1:22:31. He walked around for about 20 more seconds, put on his shoes, and sat down on the bench below the pull-up bars, again located

toward the back of the recreation room. *Id.* at 1:22:31–1:23:31. Mr. Moore asserts that he was "blindly" using his hands to find the storage room door and the workout equipment. Moore Dec., dkt. 104 ¶ 9. Mr. Moore sat on the bench for about two more minutes, during which time he pulled his T-shirt up to his face several times and appeared to cough or sneeze several times. Video at 1:23:31–1:25:40.

At this point, Officer Andrews and Sergeant Pierce had been away for close to nine minutes. The video shows them returning to the recreation room at 1:25:40. Video at 1:25:40. Mr. Moore states that Sergeant Pierce returned to the door, opened the cuff port, spoke to get Mr. Moore to look his way, and then immediately used his pepper spray. Moore Dec., dkt. 104 ¶ 10. The video shows that, within four seconds of returning to the recreation room door, Sergeant Pierce had grabbed his pepper spray, lowered himself to his knee, and placed his hand through the cuff port. Video at 1:25:40–1:25:44. He then administered a four-second burst of pepper spray and closed the cuff port.[4] Moore Dec., dkt. 104 ¶ 9; Video at 1:25:47–1:25:51. During this period, Officer Andrews was standing a few feet away from Sergeant Pierce. Video at 1:25:40–1:25:51.

Almost immediately after Sergeant Pierce administered the pepper spray, Mr. Moore stood up, moved toward the recreation room door, covered his face with his T-shirt, and appeared to cough, sneeze, and breathe heavily for about two minutes. Video at 1:25:44–1:27:33. During this time, he held his arms out in front of him as he moved around the room, and a liquid can be seen on at least one of his arms. *Id.* About two minutes after the pepper spray was administered, Mr.

---

[4] Sergeant Pierce asserts that he administered a one-second blast of pepper spray, Pierce Dec., dkt. 109 ¶ 14, but Mr. Moore asserts that it was a four-second blast, Moore Dec., dkt. 104 ¶ 10. The video shows that Sergeant Pierce's hand was through the cuff port for about four seconds, and Mr. Moore's actions on the video are consistent with the spraying starting at the beginning of that four-second period. *See* Video at 1:25:47–1:25:51 Because the video does not clearly contradict Mr. Moore's version of events, the Court must take it as true.

Moore was at the recreation room door, and Sergeant Pierce can be seen approaching the door. *Id.* at 1:27:33; Moore Dec., dkt. 104 ¶ 11. Sergeant Pierce walked back and forth for about another minute, at which point he gave Mr. Moore a new spit mask through the cuff port. Moore Dec., dkt. 104 ¶ 12; Video at 1:27:33–1:28:20. Mr. Moore then put on the spit mask, was placed in handcuffs, and was led out of the room. *Id.* at 1:28 :20–1:29:32.

After Mr. Moore left the recreation room, he was taken to the shower to wash off the pepper spray. Andrews Dec., dkt. 98-2 ¶ 14. He was also taken to see a nurse, at which time he denied any trauma, injury, or complaints. Dkt. 98-4. In his amended complaint, he asserts that, as a results of the events in this case, he now must use reading glasses. Dkt. 43 at 5.

### III. DISCUSSION

Mr. Moore argues that Officer Andrews used excessive force against him. He also argues that Sergeant Pierce used excessive force and that Officer Andrews failed to intervene to stop Officer Andrews from using that force. Dkt. 106. The defendants argue that they did not use excessive force and that they are entitled to qualified immunity. Dkts. 97, 108.

The Court discusses the claims against the two defendants separately.

**A.    Sergeant Pierce**

Genuine issues of material fact prevent summary judgment in Sergeant Pierce's favor. A reasonable jury could find that his use of pepper spray was malicious and sadistic, thereby establishing that he used excessive force and that he is not entitled to qualified immunity.

1.    Excessive Force

Mr. Moore contends that Sergeant Pierce violated the Eighth Amendment's prohibition on excessive force by administering the second burst of pepper spray. Dkt. 106. Correctional officers violate the Eighth Amendment when they use force "not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn*

6

*v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (cleaned up). The ultimate determination of the intent of the person applying the force in an excessive force claim involving prison security measures depends on a number of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmate, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

A reasonable jury could conclude that Sergeant Pierce's use of pepper spray was not done in a good faith effort to restore and maintain discipline, but rather was malicious and sadistic. The undisputed evidence shows that Officer Andrews administered pepper spray. Then he and Sergeant Pierce left for almost ten minutes. When they returned, Mr. Moore was sitting on the bench below the pull-up bars, not on top of them anymore. Taken in the light most favorable to Mr. Moore, the evidence shows that Sergeant Pierce said something to get his attention and then immediately administered a four-second burst of pepper spray. And the video shows that, within four seconds of returning to the recreation room door, Sergeant Pierce was on his knee with the pepper spray can through the cuff port.

Under Mr. Moore's version of events, the *Whitley* factors could support a reasonable jury verdict against Sergeant Pierce. First, because Mr. Moore was now sitting on the bench and not on top of the pull-up bars as he had been previously, a reasonable jury could conclude that the need for force had decreased since the first pepper-spray burst. Second, despite this, Sergeant Pierce administered a significantly more serious dose of pepper spray—four seconds instead of one. Third, a reasonable jury viewing the video and accepting Mr. Moore's testimony as true could conclude that the second pepper-spray burst had a much larger impact on him than the first. Finally,

given the brief period that passed between the time Sergeant Pierce returned to the recreation room door and his use of the pepper spray, a reasonable jury could conclude that Sergeant Pierce did not take any efforts to temper the severity of his response by, for example, asking Mr. Moore again to put on a spit mask and giving him a chance to comply or administering a shorter burst of pepper spray.

Sergeant Pierce contends that the force was not excessive because, "[t]en minutes after Officer Andrews first administered OC spray," Mr. Moore was "still not complying with orders to submit to restraints." Dkt. 97 at 10. Instead, during that time, "he slid his spit mask underneath the door to the storage closet, did pull-ups, and sat down on the workout equipment towards the back of the Recreation Room," at which point Sergeant Pierce administered the second burst of pepper spray. *Id.* A reasonable jury viewing the video and believing the defendants' version of events might reach such a conclusion, but the record evidence also supports a reasonable inference that Mr. Moore was sitting quietly on the bench and not resisting when Sergeant Pierce came up and pepper-sprayed him with little warning and no realistic chance to comply with any new order that was given. At that point, Mr. Moore's original spit mask was gone, so Sergeant Pierce arguably knew the original mask was gone and could not have been using the pepper spray in an attempt to get Mr. Moore to use the original mask. And the defendants have pointed the Court to no evidence that they offered Mr. Moore a clean mask before spraying him a second time and that he refused. On this record, there are genuine issues of material fact as to Sergeant Pierce's intent when he administered the second burst of pepper spray—that is, whether it was a good-faith effort to restore discipline or a malicious and sadistic act. As a result, genuine issues of material fact exist as to whether a constitutional violation occurred.

2. Qualified Immunity

Sergeant Pierce can, however, may still avoid liability if he shows that he is entitled to qualified immunity. "Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). This "clearly established" standard ensures "that officials can reasonably . . . anticipate when their conduct may give rise to liability for damages." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). Qualified immunity thus "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "To defeat a defense of qualified immunity, the plaintiff must show two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Leiser,* 933 F.3d at 701 (cleaned up).

As explained above, Sergeant Pierce is not entitled to summary judgment as to the first element because, taken in the light most favorable to Mr. Moore, the facts show a violation of a constitutional right—namely the Eighth Amendment right against cruel and unusual punishment.

As to the second element, Sergeant Pierce argues that Mr. Moore "has proffered no clearly established right to show that [his] actions were in violation of the Eighth Amendment," dkt. 108 at 6. But "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *McCottrell*, 933 F.3d at 664 (cleaned up); *see also Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or

other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."). As a result, Sergeant Pierce is not entitled to summary judgment on qualified-immunity grounds. *See Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) ("[W]here there are disputes of material fact . . . that are essential to the question of the reasonable use of force ,. . . it is impossible to conclude on summary judgment whether [the defendant is] entitled to qualified immunity.").

## B.    Officer Andrews

Mr. Moore contends that Officer Andrews violated the Eighth Amendment's prohibition on excessive force when he administered the first burst of pepper spray and when he failed to intervene to stop Sergeant Pierce from administering the second burst of spray. Dkt. 106 at 10–11.[5] At a minimum, genuine issues of material fact preclude summary judgment as to the failure-to-intervene theory, so Officer Andrews's motion for summary judgment must be denied.[6]

---

[5] At screening, Mr. Moore was allowed to proceed with "Eighth Amendment claims of excessive force" against Sergeant Pierce and Officer Andrews. Dkt. 42 at 3. In his response, he argued that Officer Andrews failed to stop Sergeant Pierce from administering the second burst of pepper spray, thereby making him liable for that incident of excessive force. *See* dkt. 106 at 11 ("[O]nce defendants come back to recreation door . . . E. Andrews stands several feet away from Sgt. K. Pierce. As if he already knew the malicious intentions of Sgt. K. Pierce had and the infliction of pain he was planning, upon the plaintiff. So E. Andrews stood away to protect himself from harm. E. Andrews shows that he knows that Sgt. K. Pierce is about to do something wrong and allows it to happen and also seeks to cover up the wrong making him liable by deliberate indifference.").The defendants did not object to Mr. Moore raising the failure-to-intervene theory in his response (and, indeed, did not respond to his argument on this point at all), thereby waiving any objection. Dkt. 108. Regardless, the Court recognizes that, practically speaking, there is no difference between an "excessive force" claim and a "failure-to-intervene" claim. *See, e.g., Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2020) (explaining, in a Fourth Amendment case alleging excessive force, that an officer may be "held to account both for his own use of excessive force . . . as well as his failure to take reasonable steps to attempt to stop the excessive force used by his fellow officers"). In addition, Mr. Moore's amended complaint put the defendants on notice that he considered both of them to be responsible for both pepper-spray blasts. *See* dkt. 43 at 4 (errors in original) ("The actions of Sgt. K. Pierce & Ofc. E. Andrews lying and refusing to give me a clean mask was purposeful to lead me too resist their orders so that they (the defendants) could bring unnecessary harm and a excessive use of force endangering my life shows and proves their treatment of cruel and unusual punishment and possibly planned by the defendants."). As a result, Mr. Moore did not raise a new claim in his response.

[6] Because Officer Andrews's motion for summary judgment is due to be denied, the Court need not decide whether his use of pepper spray also constituted excessive force.

As explained, correctional officers violate the Eighth Amendment when they use force "not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn*, 881 F.3d at 1006 (cleaned up). In addition to those who use excessive force, those who fail to intervene in an ongoing instance of excessive force can be liable. *Id*. at 1007 ("An officer who fails to intervene to try to prevent known or cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under § 1983."). An officer "can be liable for another officer's excessive force only if that officer had a realistic opportunity to intervene and stop the first officer's actions. A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (cleaned up). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (cleaned up).

Mr. Moore argues that Officer Andrews failed to intervene to stop Sergeant Pierce from administering the second burst of pepper spray. Dkt. 106 at 11. Officer Andrews offered no argument or evidence to counter this contention in his reply. Dkt. 108.

As explained above, a reasonable jury could find that the second burst of pepper spray amounted to an excessive use of force. Thus, Officer Andrews can be liable for that use of force if he had a realistic opportunity to intervene and warn Sergeant Pierce to stop. *Miller*, 761 F.3d at 826. Mr. Moore notes that Officer Andrews stood a distance from Sergeant Pierce during the second pepper spray burst, as if to protect himself. Dkt. 106 at 11. The video confirms that Officer Andrews stood several feet away from Sergeant Pierce during the second burst. And as noted, taken in the light most favorable to Mr. Moore, the evidence supports the conclusion that Sergeant

Pierce administered a four-second burst of pepper spray. On this record, the Court cannot say that no reasonable jury could conclude that Officer Andrews lacked a reasonable opportunity to intervene, if not before Sergeant Pierce deployed the pepper spray, then at least during the four-second spray itself. *See Abdullahi*, 423 F.3d at 774.[7] Accordingly, Officer Andrews's motion for summary judgment is denied.

### IV. CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment, dkt. [96], is **denied**. The Court also notes that the defendants did not move for summary judgment on Mr. Moore's Fourteenth Amendment equal protection claim, *see* dkt. 42, so that claim also remains in the case.

It is the Court's preference that counsel represent Mr. Moore for purposes of settlement and trial. Therefore, the Court *sua sponte* reconsiders the denial of Mr. Moore's motion for assistance with recruiting counsel. That motion, dkt. [67], is **GRANTED** to the extent that the Court will now attempt to recruit pro bono counsel to represent Mr. Moore.

**IT IS SO ORDERED.**

Date: 3/7/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

---

[7] Officer Andrews does not invoke the protection of qualified immunity as to the failure-to-intervene theory, but—even if he did—his argument would fail. As explained, a reasonable jury could find that Officer Andrews used excessive force and that he had a reasonable opportunity to stop Sergeant Pierce. For the same reason, at summary judgment, the Court cannot resolve the issue of whether Officer Andrews violated a clearly established constitutional right of which a reasonable person would have known when he failed to intervene to stop Sergeant Pierce from administering the second burst of pepper spray.

Distribution:

DEANDRE MOORE
258442
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov